**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bobby MYERS, Jr., Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jarmal Lamar MYERS, Defendant–Appellant.**

Nos. 94–5502, 94–5503.

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1995.

Decided Oct. 4, 1995.

---

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellants. John Samuel Bowler, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** William Plyler, Raleigh, North Carolina, for Appellant Bobby Myers. Janice McKenzie Cole, United States Attorney, Raleigh, North Carolina, for Appellee.

Before MURNAGHAN, NIEMEYER, and HAMILTON, Circuit Judges.

Affirmed in part and vacated and remanded in part by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge NIEMEYER and Judge HAMILTON joined.

## OPINION

MURNAGHAN, Circuit Judge:

The defendants, Bobby Myers ("Bobby") and Jarmal Myers ("Jarmal") are brothers. In October 1993, Bobby and Jarmal kidnapped a woman, stole her car, and raped and beat the woman multiple times. The brothers were apprehended, and pled guilty and were sentenced in state court for counts of kidnapping, rape, robbery, and assault. Bobby and Jarmal were subsequently charged in federal court with carjacking and use and possession of a firearm. They pled guilty to those charges as well, and the district court imposed federal sentences to run consecutively to their state sentences. Both defendants challenge here their sentences on several grounds; Jarmal also contests the district court's denial of a continuance at his juvenile transfer hearing. For the reasons stated below, we affirm the district court's denial of a continuance at Jarmal's juvenile transfer hearing and affirm Bobby's sentence, but vacate Jarmal's sentence and remand for resentencing.

### I. *Facts*

On October 28, 1993, the day of the crime, Bobby was nineteen years old and Jarmal was almost eighteen years old. Jarmal had recently enlisted in the Navy, and after spending the evening at a "liquor house," the two brothers came upon the idea of visiting some of Jarmal's friends before Jarmal entered the Navy. They decided to steal a car, and proceeded to a gas station in Raleigh, North Carolina to await a victim.

Meanwhile, twenty-three-year-old LBK left her nearby home in a Mazda GLC with her dog to buy cigarettes and gas. At approximately 11:00 p.m., she stopped at the gas station in Raleigh at which Jarmal and Bobby were waiting, and sat in her car to count the seven dollars and change that she had with her.

While Jarmal pretended to use the telephone at the station, Bobby headed for the victim's car. Jarmal then followed. They arrived at the car before LBK had gotten out, pointed a gun at her, and ordered her into the back seat. The defendants got into the front seat of the car, and as they drove out of the station, took LBK's seven dollars from her. They drove on back roads to the north Raleigh area.

Shortly after they began driving, Bobby got into the back seat to have sex with the victim. He ordered her to put the puppy in the trunk area of the car and to pull up her dress. When she refused, the brothers told her that they would kill her puppy if she did not comply. Bobby then vaginally raped LBK in the back seat while Jarmal drove. Bobby held the gun to the side of LBK's head while raping her. Jarmal then stopped the car and also raped LBK in the back seat with the gun against her head.

When the car subsequently stalled and the defendants were unable to restart it, Bobby became angry and fired his gun, although not aiming it at anyone. Eventually, Bobby and Jarmal abandoned the car and forced the victim to accompany them on foot. After walking for some time, they entered a wooded area, ordered the victim to lie down on the ground, and each defendant again took his turn raping the victim while the other held the gun.

After the rapes, Bobby began to choke LBK and twisted her neck until her collar bone popped. Jarmal watched and when he heard the sound of a bone breaking, thought that Bobby had broken LBK's neck. At that point, Jarmal began to hit the victim in the head with the gun. When asked later whether they were trying to kill the victim, Jarmal said that he "panicked" and that many things were going through his head.

The defendants dragged LBK into the woods and left her. LBK managed to crawl to a nearby residence and scratch on the door for help. She was taken to a neurointensive care ward at a nearby hospital, and suffered permanent damage to her right eye, depressed skull fractures, and some loss of vision.

After the defendants left LBK in the woods, they went to get a drink and smoke cigarettes. Jarmal had given Bobby his wallet earlier in the day, and the brothers realized that Bobby might have left the wallet in LBK's car. They decided that they would

report the wallet as stolen, and then used the victim's seven dollars to take a taxi home. Jarmal and Bobby separated at that point, and while Bobby sold the gun, Jarmal attempted to use LBK's ATM card at several bank teller machines. Jarmal later changed out of the clothes that he had been wearing that evening. Bobby's bloody clothes were eventually recovered from his home.

On October 29, 1993, the day after the crime occurred, Jarmal went to the police to file a false report that his wallet had been stolen. The police, who had already focussed on Jarmal as a possible perpetrator of the crime based on information from LBK and an investigation, later contacted Jarmal, and charged and arrested him. Jarmal was interviewed on October 30, 1993, and with his help, the police apprehended Bobby on October 31, 1993.

Bobby and Jarmal were charged with criminal offenses in both state and federal court. Their state cases were resolved on January 11, 1994. Both men pled guilty in state court to first degree kidnapping, two counts of first degree rape, robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill. Bobby received two life sentences plus 40 years, all to be served consecutively. Under state law, he must serve a minimum of 47 years before he is eligible for parole. Jarmal received two consecutive life sentences and must serve 40 years before he is eligible for parole.

On November 8, 1993, the prosecution in the federal criminal case against Bobby and Jarmal made a motion in court to try Jarmal, who was a juvenile at the time of his offense, as an adult. At Jarmal's juvenile transfer hearing, held two days later, Jarmal's counsel made a motion for a continuance, arguing that she had not had adequate time to prepare for the hearing. The district court denied the motion and at the end of the hearing, ordered that Jarmal's case be transferred out of juvenile jurisdiction and that he be tried as an adult.

Bobby and Jarmal were indicted in the United States District Court for the Eastern District of North Carolina and charged with carjacking, in violation of 18 U.S.C. § 2119, and use of a firearm to facilitate a violent crime, in violation of 18 U.S.C. § 924(c); Bobby was also charged with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). Jarmal had no prior criminal record. Both men pled guilty to all charges and received the statutory maximum sentence on each count; Bobby received a sentence of 480 months, and Jarmal received a 360-month sentence. The district court imposed each sentence to run consecutively to the previously-imposed state sentences.

Both defendants appeal. They challenge the district court's denial of sentencing credit for acceptance of responsibility, the court's decision to depart upward from the United States Sentencing Guidelines ("U.S.S.G.") range, and the court's imposition of federal sentences to run consecutively to their state sentences. In addition, Jarmal challenges the district court's refusal to grant him a continuance of his juvenile transfer hearing.

## II. *Juvenile Transfer Hearing*

■ Jarmal was almost eighteen years old at the time he committed the offenses at issue. On November 8, 1994, the government filed a motion in federal court to try him as an adult. Jarmal appeared in federal court for the first time on November 9, 1994, when the Federal Public Defender's Office was assigned to represent him. The next day, the court held a hearing on the government's motion to transfer Jarmal to adult jurisdiction. The public defender representing Jarmal, Elizabeth Manton, asked that the hearing be continued, arguing that she had not been allowed adequate time to prepare for the hearing. The district court denied the motion to continue and at the conclusion of the hearing, ordered that the case be transferred and Jarmal be tried as an adult. Jarmal contends that the district court violated his constitutional right to effective assistance of counsel by holding his juvenile transfer hearing only one day after his first appearance in federal court. We review the district court's refusal to grant a continuance for abuse of discretion. *United States v. Bakker*, 925 F.2d 728, 735 (4th Cir.1991); *United States v. LaRouche*, 896 F.2d 815, 823 (4th Cir.), *cert. denied*, 496 U.S. 927, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990) ("In order

to prove an abridgment of the sixth amendment right to effective assistance of counsel based on an allegedly wrongful denial of a continuance, a defendant must first demonstrate that the district court 'abused its discretion' in denying the motion."). Abuse of discretion has been defined in such circumstances as "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for a delay." *LaRouche*, 896 F.2d at 823 (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983)).

██ The juvenile jurisdiction waiver hearing is a vitally important stage in the proceedings against a defendant. It is the point at which the defendant may assert diminished responsibility for an unlawful act due to youth. *Kemplen v. State of Maryland*, 428 F.2d 169, 175 (4th Cir.1970). Thus, the Sixth Amendment right to effective assistance of counsel requires that a defendant have the opportunity to retain counsel for such proceedings, *id.*, and the waiver proceedings are subject to the confines of due process, *see Kent v. United States*, 383 U.S. 541, 553, 86 S.Ct. 1045, 1053, 16 L.Ed.2d 84 (1966).

██ However, in order to gain a reversal of the district court's denial of a continuance, the defendant must show prejudice. *Bakker*, 925 F.2d at 735; *LaRouche*, 896 F.2d at 823. "[I]n the absence of circumstances giving rise to a presumption that the defendant's case was prejudiced, the defendant must point to specific errors made by defense counsel that undermine confidence in the outcome of the trial." *LaRouche*, 896 F.2d at 823; *see also Morris*, 461 U.S. at 27, 103 S.Ct. at 1624 (Brennan, J., concurring) ("Requiring ... a showing [of prejudice] to support ineffective-assistance claims may be appropriate because courts are able to assess an attorney's performance and the effect of that performance on a defendant's rights based on the records before them."). In *Bakker*, 925 F.2d 728, the defendant claimed that he was unable to assist in his defense due to psychological difficulties. After a psychiatric evaluation was complete and the parties agreed that the defendant was competent to stand trial and to aid in his defense, defense counsel requested a five-day continuance to rees-

tablish his relationship with his client. The trial court denied the request and resumed the trial that same day. In finding that the district court did not abuse its discretion, we pointed out that Bakker had failed to show any way in which the denial of a continuance had prejudiced his case. *Id.* at 736.

Similarly, in *LaRouche*, we required that the defendants, in order to show prejudice due to the district court's denial of a continuance, allege specifically the way in which they were prejudiced. 896 F.2d at 825. Although the defendants claimed that they were not prepared for trial and that they could have gathered additional information had the continuance been granted, we ruled that their complaints were not sufficiently specific to require a reversal of the district court's order. We stated that the defendants were required to assert specific ways in which their defense could have been improved with the grant of a continuance; general allegations that the defense could have been better were not enough. *Id.; see also United States v. Cronic*, 466 U.S. 648, 666, 104 S.Ct. 2039, 2050, 80 L.Ed.2d 657 (1984) (requiring a showing of counsel's specific errors to support an ineffective assistance claim based on inadequate time to prepare); *United States v. Badwan*, 624 F.2d 1228, 1231 (4th Cir.1980) ("We must be reluctant to find arbitrariness in the exercise of trial court discretion based upon no more than post-hoc assertions by counsel that given more time something might have turned up."), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981).

In the instant case, Manton was appointed as Jarmal's counsel only one day before the transfer hearing. She stated to the court when she made her motion for a continuance that she had not had time to have a confidential interview with her client, and that her only contact with Jarmal had been a brief conversation in Jarmal's holding cell. She also informed the court that she had been able to speak to Jarmal's mother, who was present at the hearing, for only fifteen minutes. The only records Manton had in her possession were school records provided by the government, and she admitted that she knew nothing about Jarmal's background.

As the government concedes in its brief, "[t]here is no doubt that the scheduling of the transfer hearing was abrupt." However, the defendant has made no assertions in his brief of ways in which his hearing would have been different had the continuance been granted. Under 18 U.S.C. § 5032, the statute governing transfers of juveniles to adult jurisdiction, the trial court is required to make a finding on the record regarding:

> the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032. The government presented extensive evidence regarding these factors at the transfer hearing, and the defendant does not contest on appeal the completeness or the accuracy of the information provided by the government. The defendant's most specific assertion of prejudice is that his counsel, after a brief interview in the holding cell, had "serious questions regarding Jarmal's level of intellectual functioning...." However, that is the type of broad assertion that, without any showing of specific information that might have changed the result of the hearing, we have held does not suffice for a finding of prejudice sufficient to warrant a reversal. Because the defendant has not shown prejudice, we affirm the district court's decision to deny Jarmal a continuance of his juvenile transfer hearing.

### III. Acceptance of Responsibility

■ The defendants claim that the district court erred in denying them a reduction in their respective Sentencing Guidelines offense levels for acceptance of responsibility.[1] On appeal, we review the district judge's application of the Sentencing Guidelines under a clearly erroneous standard when the issue depends upon a factual determination.

*United States v. Jones,* 31 F.3d 1304, 1315 (4th Cir.1994); *United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989). When the issue is one of the legal interpretation of the Guidelines, our review is *de novo. Jones,* 31 F.3d at 1315; *Daughtrey,* 874 F.2d at 217. On mixed questions of law and fact regarding the Guidelines, we apply a due deference standard in reviewing the district court. *Daughtrey,* 874 F.2d at 217.

■ Under the Sentencing Guidelines, a defendant's offense level may be decreased by two levels if the defendant "clearly demonstrates acceptance of responsibility for his offense...." U.S.S.G. § 3E1.1(a). The defendant may receive an additional one-level reduction if his offense level is sixteen or greater and he assists the government in investigation or prosecution. *Id.* § 3E1.1(b). It is the defendant's burden to show, by a preponderance of the evidence, that his sentence should be reduced for acceptance of responsibility. *United States v. Urrego–Linares,* 879 F.2d 1234, 1238–39 (4th Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989); *United States v. Martinez,* 901 F.2d 374, 377 (4th Cir.1990).

■ The defendants first argue that the district court employed an incorrect standard of proof in ruling on their request for sentencing credit for acceptance of responsibility. The defendants cite to various statements that they claim indicate that the district court did not apply the preponderance of the evidence standard by which acceptance of responsibility must be proven. Since the defendants acknowledge that they did not object to the district court's alleged use of an incorrect legal standard at the sentencing hearing, review in this Court is for plain error. *See United States v. Grubb,* 11 F.3d 426, 440–41 (4th Cir.1993); Fed.R.Crim.P. 52(b).

The district judge stated at Jarmal's sentencing hearing that the judge's job in determining acceptance of responsibility was to hear all of the evidence, "to digest it, to weigh it, and then exercise my judgment in

---

1. We use the November 1992 version of the Sentencing Guidelines, which is the version that was in effect at the time of the instant crimes, in determining the sentences in the instant case. *See* U.S.S.G. § 1B1.11(b).

the form of discretion permissible within the bounds of the evidence that is before me...." The judge went on to elaborate further on the use of discretion in making an acceptance of responsibility finding. While the defendants claim that the district judge's statements regarding his discretion in sentencing show that he did not understand the standard for determining acceptance of responsibility, it is rather the defendants who erroneously assume that because a finding is to be made by a preponderance of the evidence, the district judge is accorded no discretion in making the finding. The statements made by the district judge at sentencing merely indicated that the judge realized that he was allowed some discretion in determining whether factors exist to support a finding of acceptance of responsibility, and that the judge was aware that some balancing of the evidence is necessary in making an acceptance of responsibility determination. Contrary to the defendants' assertions, the sentencing judge's statement that he must find "some evidence" on which to base his finding does not indicate plain error in his understanding of the preponderance of the evidence standard.

■ Further, we reject the appellants' contention that the district judge's mention of the atrocity of the crimes in question while assessing acceptance of responsibility indicates his lack of understanding of the factors to be considered in determining acceptance of responsibility. While the atrocity of the crimes would not be a proper factor to take into account in determining acceptance of responsibility, the judge's statements simply did not indicate that he was unaware of the relevant considerations at sentencing regarding acceptance of responsibility. The appellants have failed to show plain error in the district court's understanding of the legal issues in the acceptance of responsibility determination.

■ The defendants also contest the district judge's factual determination that the defendants were not entitled to a reduction in offense level for acceptance of responsibility. We review the district judge's factual determination regarding whether to apply § 3E1.1 under the clearly erroneous standard. *United States v. White*, 875 F.2d 427, 431 (4th Cir.1989). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 comment. (n.5).

■ The commentary to Sentencing Guideline § 3E1.1 lists a nonexhaustive set of factors that the district court may use in deciding on acceptance of responsibility:

(a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable.... [A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;

(b) voluntary termination or withdrawal from criminal conduct or associations;

(c) voluntary payment of restitution prior to adjudication of guilt;

(d) voluntary surrender to authorities promptly after commission of the offense;

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(f) voluntary resignation from the office or position held during the commission of the offense;

(g) post-offense rehabilitative efforts (*e.g.,* counseling or drug treatment); and

(h) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

U.S.S.G. § 3E1.1, comment. (n.1). Conduct indicating acceptance of responsibility "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.* comment. (n.3). Further, in determining acceptance of responsibility, the district court may look beyond the factors that constitute part of the conviction, even if those factors would not be sufficiently relevant to increase the defendant's sentence. *See United States v. Choate*, 12 F.3d 1318,

1320 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1994).

The defendants both admitted their involvement in the instant offense within forty-eight hours of arrest, and entered guilty pleas to all counts without the benefit of plea agreements. Jarmal also wept when he told the police and the probation officer of his actions, and assisted the police in locating Bobby and in finding evidence related to the crime. However, evidence was also introduced that after the crime, Jarmal and Bobby deserted the victim in the woods, and Jarmal attempted to use LBK's ATM card at several banks. Moreover, the defendants denied responsibility for some of their criminal conduct after they were apprehended. Although Bobby had pled guilty to assault with a deadly weapon with intent to kill in state court, he claimed in his statement to the police that he and his brother did not try to kill LBK. Jarmal went to the police to report that his wallet had been stolen after the crime, in order to cover his tracks in case the wallet was found in LBK's car, *i.e.,* in order to conceal his crime. In addition, in his interview with the police, Jarmal denied that a rape had occurred in the car on the night of the crime. In light of the several factors weighing against acceptance of responsibility in this case, we find that the district court's determination that the defendants had not proven acceptance of responsibility by a preponderance of the evidence was not clearly erroneous.

Jarmal makes two final arguments on acceptance of responsibility that relate only to his sentencing proceeding. The first concerns a motion for downward departure in sentencing that was made on Jarmal's behalf. Jarmal's counsel made the motion based on information that she had gathered that indicated that Jarmal was unusually attached to his older brother and was especially susceptible to the influence of others. At sentencing, the prosecution pointed to the information presented on Jarmal's behalf as showing Jarmal's attempt to shift blame for his illegal conduct to his brother, and as evincing a lack of acceptance of responsibility. Jarmal objects to the prosecution's characterization in court of his motion for downward departure as an attempt to shift blame. He states that

he should not be penalized for making a justified motion for downward departure, and that the court's denial of acceptance of responsibility credit was improper to the extent that it was based upon information provided in his motion. However, Jarmal points to no statement made by the district court indicating that the court used the motion as evidence of his attempt to shift blame away from himself and to deny a reduction for acceptance of responsibility. The prosecution's characterization of the motion was merely argument, and Jarmal has not shown any way in which it affected the integrity of his sentencing proceedings. If there was error, therefore, it was on the part of the government and was clearly harmless. *See* Fed.R.Crim.P. 52(a).

Lastly, Jarmal contests the district court's refusal to qualify his expert, Dr. Richard Rumer, who was a clinical psychologist and had experience working with adolescent offenders who had been involved in sexual offenses. Rumer was prepared to testify on issues regarding Jarmal's future dangerousness, his relationship with his brother, and his acceptance of responsibility. The district judge refused to qualify Rumer as an expert, stating that he did not need an expert in order to make his factual finding regarding acceptance of responsibility; the judge did, however, accept into evidence Rumer's written psychological evaluation of Jarmal. We review the district court's preclusion of an expert's testimony using an abuse of discretion standard, *see United States v. Mitchell,* 954 F.2d 663, 665 (11th Cir.1992), and find that the district judge, as the fact finder at Jarmal's sentencing hearing, was able to determine for himself whether the testimony of an expert would add anything to his view of the facts in the case and to the written report already in his possession. The judge did not abuse his discretion in failing to qualify Jarmal's expert.

In sum, we affirm the district court's decision to deny sentencing credit to both Bobby and Jarmal for acceptance of responsibility.

### IV. *Upward Departure and Consecutive Sentencing*

The district court sentenced Bobby to 40 years imprisonment, and Jarmal to

30 years imprisonment. In imposing the sentences, the district court departed upward to the statutory maximum for each of the crimes to which the defendants pled guilty in federal court,[2] and then imposed the sentences to run consecutively to the state sentences which had already been imposed. We review the district court's upward departure under a "multi-part test of 'reasonableness.'" *United States v. Hummer*, 916 F.2d 186, 192 (4th Cir.1990), *cert.* denied, 499 U.S. 970, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991). We examine first, *de novo*, whether the district court's reasons for departing identify factors not adequately taken into consideration in the Guidelines. We then analyze the factual basis for those factors under a clearly erroneous standard. *Id.* Finally, we determine whether the identified factors warrant a departure from the defendants' guideline range, and whether the departure imposed is reasonable, reviewing the district court under an abuse of discretion standard. *Id.* The issue of consecutive sentencing is a legal issue which we review *de novo*. *See United States v. Hill*, 59 F.3d 500, 502 (4th Cir.1995). We begin our discussion by examining the legal and factual basis for the district court's decision to depart upwardly in imposing Jarmal's and Bobby's sentences. We then turn to the reasonableness of the district court's departure and discuss, along with that, the related issue of the district court's decision to impose consecutive sentences on Bobby and Jarmal.

The bases of the judge's upward departure were: physical injury under U.S.S.G. § 5K2.2;[3] extreme psychological injury under U.S.S.G. § 5K2.3; and extreme conduct under U.S.S.G. § 5K2.8. While the defendants do not challenge on appeal the district court's decision to depart upwardly for extreme psychological injury, they challenge the departure for extreme conduct and for physical injury, on the grounds that these two factors were already taken into account in determining the defendants' state and federal sentences, and that considering them for purposes of departure thus constituted double punishment.

■ A departure may be warranted for extreme conduct "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim. . . . Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." U.S.S.G. § 5K2.8. The defendants argue that to the extent that a finding by the district court of extreme conduct was made based on the sexual nature of the crime, the court's departure would constitute double counting because the sexual crime, rape, had already been punished in state court. However, the district court explicitly based its finding of extreme conduct on gratuitous infliction of injury, pointing out the way in which the defendants "pistol whip[ped]," choked, and tried to kill the victim after they had kidnapped, carjacked, and raped. There is no indication from the record that the district court's finding of extreme conduct was based on the sexual nature of the crime, and the court's departure on that basis therefore did not constitute double punishment.

■ The defendants are correct, however, in asserting that the district court erred in departing upwardly for physical injury. The Sentencing Guidelines state that physical injury is an appropriate factor to consider in departing from the Guidelines sentence. *See* U.S.S.G. § 5K2.2. However, physical injury was already taken into account in determining the defendants' guideline range under § 2B3.1(b)(3)(C), which mandates an increase in the offense level for permanent or life-threatening bodily injury sustained by the victim. The Guidelines allow an upward departure based on a factor already taken into

---

2. The statutory maximum in the instant case for carjacking (Count I), 18 U.S.C. § 2119(2), is 25 years; use of a firearm in a crime of violence (Count II), 18 U.S.C. § 924(c), is 5 years; and possession of a firearm by a felon (Count III), 18 U.S.C. § 922(g), is 10 years, *see* 18 U.S.C. § 924(a)(2). Bobby was sentenced on all three counts, and Jarmal was sentenced on Counts I and II.

3. At the sentencing hearing, the government identified U.S.S.G. § 2B3.1(B) as the appropriate guideline for a departure for physical injury. However, § 2B3.1(B) is a provision which is used to calculate an adjustment in the defendant's offense level. A departure for physical injury is governed by § 5K2.2.

account in the guideline calculation "if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate." U.S.S.G. § 5K2.0, p.s. The district court made no finding that the adjustment for physical injury under § 2B3.1 was inadequate, and in fact, did not acknowledge a possible double-counting issue. Thus it was error for the district court to depart upwardly based on physical injury.

■ The Supreme Court has stated that "it is an incorrect application of the Guidelines for a district court to depart from the applicable sentencing range based on a factor that the Commission has already fully considered in establishing the guideline range....," *Williams v. United States,* 503 U.S. 193, 200, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992), and the defendants argue that they should be resentenced due to the district court's reliance on an impermissible basis for departure. However, we must remand for resentencing "only if the sentence was 'imposed *as a result of* an incorrect application' of the Guidelines...." *Id.* at 202–03, 112 S.Ct. at 1120 (quoting 18 U.S.C. § 3742(f)(1)). If we are convinced that, on the whole, the district court's reliance on an impermissible ground did not affect its determination of the sentence (*i.e.,* the sentence was not *a result of* the district court's error), the case need not be remanded for resentencing. *Id.* at 203, 112 S.Ct. at 1120 ("When a district court has intended to depart from the guideline range, a sentence is imposed 'as a result of' a misapplication of the Guidelines if the sentence would have been different but for the district court's error."). The party challenging the sentence must show that the district court used an improper factor for departure at sentencing, but does not have the burden of proving that the improper factor was determinative in the sentence imposed. "Rather, once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error ... did not affect the district court's selection of the sentence imposed." *Id.*

■ In the instant case, the district court departed on three grounds, one of which has not been challenged on appeal and is thus presumptively proper, and one of which we have determined was a proper factor on which to rely. The court also relied on one improper factor, physical injury. However, it is clear from the record that had the court not taken into consideration the physical harm suffered by the victim, it still would have concluded that the same upward departure was warranted. The court based its departure decision on the egregious behavior of the defendants in wantonly inflicting pain on the victim, and on the extensive psychological effect of the crime on the victim, thereby taking into account both the conduct of the defendants and the effect on the victim. The court's erroneous reliance on physical harm as a factor in the upward departure decision was harmless, *see* Fed.R.Crim.P. 52(a), and we conclude that the district court was justified in imposing an upward departure in the instant case.

■ Further, there is a clear factual basis for the departure factors identified by the district court. The court outlined the evidence of unusually cruel and brutal acts performed by the defendants, including continuing to beat and choke the victim after she was rendered helpless on the ground. There was an obvious basis for a finding of extreme conduct. Similarly, the victim testified to the effect that the crime had on her. She stated that she has trouble spending time alone and no longer trusts people. She is often afraid when she must walk to her car, and has altered her daily routines to ensure that she is usually with someone else. The district court did not abuse its discretion in determining that the factors identified were sufficiently important to justify a departure.

■ We next examine the length of the sentences ultimately imposed on Bobby and Jarmal, in light of the district court's decision to depart upward and its decision to impose sentences consecutive to those received by the defendants for their state convictions. In state court, both men pled guilty to first degree kidnapping, two counts of first degree rape, robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill. Bobby received two life sen-

tences plus 40 years, all to be served consecutively; he must serve a minimum of 47 years before he is eligible for parole. Jarmal received two consecutive life sentences and must serve 40 years before he is eligible for parole. Both defendants claim that their federal sentences should have been imposed to run concurrently with their state sentences.[4]

Section 5G1.3 of the Sentencing Guidelines governs the imposition of a sentence on a defendant who is subject to an undischarged term of imprisonment:

(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

(c) (Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.

U.S.S.G. § 5G1.3. The defendants first argue that subsection (b) applies, because the calculation of their sentence in the instant case, which included adjustments for the use of a firearm, assault, kidnapping, robbery, and injuries sustained by the victim, *see* U.S.S.G. § 2B3.1, took into account all of the conduct for which the defendants were punished in state court. However, we find that subsection (b) does not apply to the instant case. The undischarged sentences in state court resulted in part from convictions for

rape, conduct that was not taken into account in the federal guideline calculation. Although the defendants argue that the conduct of rape was accounted for in the federal sentencing calculation by adjustments for assault and physical injury to the victim, there are obvious components of rape that are not entirely encompassed by findings of assault and physical injury. In addition, as we noted earlier, the district judge's upward departure for extreme conduct was not based on the sexual nature of the offense, and thus did not take the counts of rape fully into account. Since rape was not fully accounted for in the sentencing calculation under the Guidelines, subsection (b) does not apply in the instant case.

■ Subsection (c) applies to the sentence calculation here. Although subsection (c) is designated as a "policy statement," we enforce it as if it were a guideline, allowing for discretion as is illustrated by the commentary and examples in the Guidelines. *See United States v. Wiley–Dunaway*, 40 F.3d 67, 70–71 (4th Cir.1994). Under § 5G1.3(c), the district court is instructed to impose a consecutive sentence for the instant offense "to the extent necessary to fashion a sentence resulting in a reasonable incremental punishment for the multiple offenses." U.S.S.G. § 5G1.3(c), comment. (n.3). The commentary explains,

To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time.

*Id.* Thus, the district court computes the defendants' guideline range for the instant offense ("instant offense guideline range"), as well as the hypothetical guideline range that would apply if the defendants were sentenced at one time in federal court for both the

---

**4.** The defendants acknowledge that their convictions for Count II, use of a firearm during a crime of violence, 18 U.S.C. § 924(c), must run consecutively to any other sentences imposed. We thus exclude the § 924(c) sentences from the calculations that follow.

instant offense and the offenses for which the state court sentences were imposed ("combined guideline range"), and then imposes a sentence within the instant offense guideline range that, together with the state sentence already imposed, results in a total sentence within the combined guideline range. *See Hill,* 59 F.3d at 503. In order to approximate a sentence within the combined guideline range, the district court may impose the sentence for the instant offense to run consecutively or concurrently, in whole or in part, to the state sentence. *See id.* A sentencing judge "should not deviate from the procedures of § 5G1.3(c) absent a reason, sufficiently articulated in the record, for doing so." *United States v. Stewart,* 59 F.3d 496, 498 (4th Cir.1995).

The determination of the hypothetical combined guideline level is the same for Bobby and Jarmal; however, Jarmal has a criminal history category of I, and Bobby has a criminal history category of V.[5] If the defendants' crimes had all been prosecuted federally, the controlling statute would have been one for aggravated sexual abuse, 18 U.S.C. § 2241, and all parties agree that the relevant provision under the Guidelines for purposes of determining the hypothetical sentence would have been § 2A3.1. Under this provision, the defendants would have had a base offense level of 27, with 4 levels each added for force or threat, infliction of permanent or life-threatening injury, and abduction of the victim. The combined offense level therefore would have been 39. This would mean a range of 262 to 327 months for Jarmal (criminal history category I), and a range of 360 months to life for Bobby (criminal history category V). The mandatory statutory sentence under the criminal sexual abuse statute is life imprisonment. *See* 18

U.S.C. § 2241(a). Thus, the district court's task was to impose sentences on Bobby and Jarmal with the combined guideline range, by imposing the instant offense guideline range to run either concurrently or consecutively to the state sentences.

We turn first to Bobby's sentence. The district court determined that Bobby's instant offense guideline range was 202 to 267 months,[6] and he was sentenced to serve a minimum of 47 years, or 564 months, in state prison. His combined guideline range was between 360 months and life, and an appropriate total sentence would have fallen within that range. The district court both imposed a consecutive federal sentence, and departed upward to 35 years, or 420 months.[7] Bobby's combined actual sentence was thus 984 months, which is within the combined offense Guideline range. We find the upward departure imposed by the district court to be reasonable, and affirm the departure as well as the district court's decision to impose consecutive sentences on Bobby.

Jarmal's sentence, however, is quite different. Jarmal's guideline range for the instant offense was 108 to 150 months,[8] and he was to serve 40 years, or 480 months, in state prison. His combined guideline range, into which his final sentence in the instant case should have fallen, was between 262 and 327 months. As in Bobby's case, the district court imposed a consecutive sentence and departed upwardly to the statutory maximum of 25 years, or 300 months, making Jarmal's total sentence 780 months. The final sentence thus exceeded the upper end of Jarmal's hypothetical combined guideline range by 453 months (*i.e.,* almost 38 years).

---

5. The defendants do not contest the computation of their criminal history categories.

6. Using U.S.S.G. § 2B3.1, the district court computed an offense level of 35 and a criminal history category V, and then subtracted 60 months off of the minimum and maximum sentences in the range, pursuant to § 2K2.4, comment. (n.2), to avoid double-counting for the use of a handgun charge.

7. The district court considered the issue of upward departure before deciding whether the sentences should be imposed consecutively or con-

currently. Although this approach resulted in a proper sentence in Bobby's case, we note that a better practice in most cases is to perform the consecutive/concurrent calculation before considering departure, because the court will then be able to refer to the combined guideline range when deciding on the magnitude of the departure.

8. Jarmal's instant offense guideline range was calculated in the same way as Bobby's, except that Jarmal's criminal history category was I.

We find Jarmal's final sentence to be unreasonable by any standards. The high end of Jarmal's combined guideline range was 327 months, which was already 153 months lower than Jarmal's state court sentence alone. In other words, if the district court imposed *any part* of Jarmal's instant offense federal sentence consecutive to his state sentence, the court would be exceeding the hypothetical combined guideline range by at least 153 months. The district court here did not even attempt to come within Jarmal's combined guideline range as prescribed in U.S.S.G. § 5G1.3, but rather exceeded it by 453 months. This the Guidelines do not allow.

We therefore vacate Jarmal's sentence and remand to the district court for resentencing. We limit the issue on remand to the recalculation of Jarmal's sentence, taking into account the proper application of U.S.S.G. § 5G1.3 and the amount of any departure which the district court might impose. If the district court on remand should decide to use a method other than that outlined in § 5G1.3 for calculating Jarmal's sentence, it must articulate on the record its reasons for doing so. *See Stewart*, 59 F.3d at 498.

### V. *Conclusion*

For the foregoing reasons, we affirm the district court in all respects except for Jarmal's sentence. As to Jarmal's sentence, we vacate and remand to the district court with instructions to recalculate the sentence.

*AFFIRMED IN PART, AND VACATED AND REMANDED IN PART.*