70 F.3d 113
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald Ray HERBERT, Defendant-Appellant.
 No. 95-5254.
 United States Court of Appeals, Fourth Circuit.
 Submitted Oct. 31, 1995.
Decided Nov. 16, 1995.
 
 George V. Laughrun, II, GOODMAN, CARR, NIXON, LAUGHRUN & LEVINE, P.A., Charlotte, North Carolina, for Appellant. Mark T. Calloway, United States Attorney, William A. Brafford, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.
 Before MURNAGHAN, HAMILTON, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Donald Ray Herbert pled guilty to kidnapping and transporting in interstate commerce[1] a 67-year-old woman whom he encountered at 4:30 a.m. while she was delivering newspapers in Lancaster, South Carolina. The district court departed upward from the career offender guideline range on the basis of physical injury, USSG Sec. 5K2.2, p.s.,[2]extreme psychological injury, USSG Sec. 5K2.3, and extreme conduct, USSG Sec. 5K2.8, and sentenced Herbert to serve 480 months imprisonment. Herbert appeals the departure. We affirm.
 
 
 2
 Herbert stopped the victim's car on the pretext that he wanted to buy a paper, forced himself into the driver's seat, and yelled that he wanted money. He told the victim he had two guns and would kill her if she tried to escape. He drove out of town for about ten miles, then turned into a field and began driving in circles. Herbert began talking about sexually assaulting or raping the victim. After he made an attempt to assault her, the victim said she could use her ATM card to get money out of the bank for him.
 
 
 3
 Herbert drove back into Lancaster, where the victim tried her ATM card at several banks without success. Herbert became enraged and said he would cut her guts out. At this point he told her he had a knife as well as two guns. The victim tried to run away, but Herbert grabbed her, twisted her arm, and dragged her back to the car, where he punched her in the face several times and choked her.
 
 
 4
 Herbert then drove to another place near some dumpsters and told the victim he was going to rape her. When she tried to talk him out of it, he said he would only lick her. He forced her to partially undress and licked her genital area, then raped her.
 
 
 5
 After this, Herbert drove to Monroe, North Carolina, to make another attempt to get money. While there, he picked up another man and drove around, following the man's directions and smoking something in a pipe. He stopped at a McDonald's and allowed the victim to go into the restroom, which was in a separate building. When she returned to the car, Herbert had gone inside to get food. The victim assumed that the other man would also stop her from escaping, so she got back in the car. The man asked the victim where she had met Herbert. On being told that he should ask Herbert, the man went inside and called the police.
 
 
 6
 After Herbert's arrest and guilty plea to kidnapping in federal court, the probation officer computed his offense level at 37. This calculation resulted from use of the guideline for criminal sexual abuse, USSG Sec. 2A3.1, which applied because that offense was committed during the kidnapping, see USSG Sec. 2A4.1(b)(7) and yielded a higher offense level. The calculation included enhancements for sexual abuse by force or threat, abduction, and an adjustment for vulnerable victim. Herbert's career offender offense level was also 37. USSG Sec. 4B1.1.[3] A 3-level reduction for acceptance of responsibility reduced the final offense level to 34, and gave Herbert a guideline range of 262-327 months.
 
 
 7
 The government moved for an upward departure of 3 levels on the basis of extreme psychological injury, USSG Sec. 5K2.3, and extreme conduct, USSG Sec. 5K2.8. The government conceded that the rape had been accounted for in the calculation of Herbert's offense level under Sec. 2A3.1 and that the victim had not suffered significant physical injury. However, the government argued that Herbert's death threats and his beating and choking of the victim were acts of extreme conduct which could justify a departure because they were acts unrelated to the rape and were not accounted for in the guideline calculation. Further, the government argued that the court could depart on the basis of extreme psychological injury.
 
 
 8
 The district court departed upward for extreme conduct, serious physical injury, and serious psychological injury, giving the following explanation for the departure:
 
 
 9
 [T]he character of the assault, and the rape, and the condition of the victim, and the condition of the Defendant,[4] and the violence used against the victim and the victim's continuing trauma and psychological impairment and personality damage, and all of her life experience that's been destroyed by what happened.
 
 
 10
 I think this is tantamont to murdering her and leaving her alive to walk around with a damaged and decimated psyche in this case.
 
 
 11
 I find that the guidelines have not taken account the brutality of this assault and the comparative weakness and strength of the victim and the perpetrator.
 
 
 12
 The court determined that a 3-level departure was appropriate because it brought the offense level back to 37, the range calculated for the offense conduct before the reduction for acceptance of responsibility.
 
 
 13
 A departure is reviewed under the test set out in United States v. Hummer, 916 F.2d 186, 192 (4th Cir.1990), cert. denied, 499 U.S. 970 (1991). The district court's decision that certain factors were not adequately considered under the guidelines is reviewed de novo. The factual basis for the departure is reviewed under a clearly erroneous standard. The court's decision that the relevant factors warrant a departure and its determination of the extent of the departure are reviewed for abuse of discretion.
 
 
 14
 Herbert argues that the factors cited by the district court were all accounted for in the enhancements made under Sec. 2A4.1 (Kidnapping) and Sec. 2A3.1 (Criminal Sexual Abuse). Section 2A3.1 provides enhancements for sexual abuse by force or threat and for injury to the victim. Section 2A4.1 provides enhancements for injury to the victim, sexual exploitation, and abduction. An adjustment was made for a vulnerable victim. In addition, because Herbert was a career offender, his offense level was ultimately determined under Sec. 4B1.1, which takes into account that the instant offense is a "crime of violence" as defined in Application Note 2 to Sec. 4B1.2. The term includes aggravated assault and forcible sex offenses.
 
 
 15
 Consequently, as the government recognized, there was no basis for a departure for physical injury. Herbert's beating and choking and threats to kill the victim occurred before the rape, but were accounted for in the 4-level enhancement under Sec. 2A3.1(b)(1) (sexual abuse by force or threat). Therefore, a departure for extreme conduct was not justified. However, none of the applicable guidelines address extreme psychological injury. This factor was a possible ground for departure.
 
 
 16
 When a district court bases a departure on both permissible and impermissible grounds, a remand is necessary unless the court of appeals finds, on the record as a whole, that the court's reliance on an impermissible ground did not affect its selection of the sentence. Williams v. United States, 503 U.S. 193, 203 (1992); United States v. Myers, --- F.3d ----, 1995 WL 581111 (4th Cir. Oct. 4, 1995). Here, the district court's comments focused most specifically on the psychological damage to the victim. The court mentioned "the victim's continuing trauma and psychological impairment and personality damage, and all of her life experience that's been destroyed by what happened ...." and further observed that "[T]his is tantamount to murdering her and leaving her alive to walk around with a damaged and decimated psyche...." These comments demonstrate to our satisfaction that the district court would have made the same 3-level departure even if it had not considered physical injury or extreme conduct. Therefore, the district court's reliance on those factors in deciding to depart was harmless error. See Myers, 1995 WL 581111 at * 9.
 
 
 17
 A departure for extreme psychological injury may be made if the victim "suffered psychological injury much more serious than that normally resulting from commission of the offense." USSG Sec. 5K2.3. Psychological injury is sufficiently severe to warrant departure "only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms, or by changes in behavior patterns." Id.
 
 
 18
 The victim submitted a statement in which she stated that she suffers flashbacks, nervousness, and distrust of people, and cannot resume her job. Moreover, the incident has affected her relationship with her husband and other family members, because she feels they may believe she was at fault. On these facts, the district court did not clearly err in finding that there was factual support for a departure based on extreme psychological injury.
 
 
 19
 The victim reported that she had received some therapy at a local rape crisis center and was "committed to learning to live with these devastating memories" although she felt that her life had been to some degree destroyed. She could not go back to work and her relations with her husband and her family had been disrupted. Although the victim revealed a willingness to do her best to deal with the aftermath of her experience, it is apparent from her statement that her psychological impairment was substantial, was likely to be extended, and had resulted in changes in her behavior. Hers are not the most severe psychological injuries imaginable; however, we find that the district court did not abuse its discretion in finding her impairment sufficiently serious to warrant a departure.
 
 
 20
 The district court departed upward from offense level 34 to level 37, in effect negating the reduction Herbert received for acceptance of responsibility. The court stated that it intended to sentence Herbert "within the range that's contemplated for the conduct itself, the untempered or unexcused conduct." Because Herbert told the probation officer, and again stated during the sentencing hearing, that he had been on drugs that night and did not realize what he had done until he had been in jail for three days, we find that the 3-level upward departure was not an abuse of discretion.
 
 
 21
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 18 U.S.C.A. Sec. 1201(a)(1) (West 1984 & Supp.1995)
 
 
 [2]
 United States Sentencing Commission, Guidelines Manual (Nov.1994)
 
 
 [3]
 The statutory maximum for kidnapping is life imprisonment. 18 U.S.C.A. Sec. 1201(a)
 
 
 [4]
 An apparent reference to the victim's frailty (5 6"', 100 pounds) compared to Herbert (5 11), 160 pounds)