# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2115

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of South Dakota. |
| Naomi B. Hawkman, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 11, 2005
Filed: February 23, 2006

_____

Before MURPHY, HANSEN, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Naomi B. Hawkman pled guilty to assault with a firearm with intent to do bodily harm and to use of a firearm to commit a crime of violence, and she was sentenced by the district court[1] to 228 months. Hawkman appeals, arguing that the district court erred by departing upward and imposing an unreasonable sentence. We affirm.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

On August 8, 2004, Naomi Hawkman and her boyfriend Quentin Charging Elk drove to the residence of his sister in law Diane after they had been drinking throughout the day. Hawkman and the women in Charging Elk's family did not get along, and Hawkman had been attacked by some of them the previous month resulting in her being taken to the hospital by ambulance for treatment of cuts and a closed head injury. After Hawkman got into a heated argument with Diane during the August 8 visit, she and Charging Elk left.

Hawkman and Charging Elk returned to Diane's residence later that evening with a .22 caliber rifle. Hawkman was sitting in the passenger seat of their car holding the rifle. There were a number of people outside in Diane's yard. Hawkman yelled for Diane's thirteen year old son to move, then fired between three and seven shots toward the house. One of the bullets struck Diane's three year old daughter Felecia. The bullet severed her spinal cord, paralyzing her from the chest down and confining her to a wheelchair and body jacket.

Hawkman and Charging Elk drove away after the shooting with Hawkman in the driver seat. When they realized their car was being followed by police, they attempted to flee and led the police on a thirty mile chase at high speeds. The chase ended in Nebraska when the tires of their car were punctured by road spikes which had been laid out by the authorities. Hawkman and Charging Elk were arrested, and Hawkman readily admitted that she had fired the shot which injured Felecia and gave a full confession. Hawkman claims that she attempted suicide when she found out about the extent of Felecia's injuries.

Hawkman and Charging Elk were indicted on four counts. They were charged with assault with intent to commit murder, in violation of 18 U.S.C. §§ 1153, 113(a)(1), and 2 (Count I); assault with a dangerous weapon, in violation of 18 U.S.C. §§ 1153, 113(a)(3), and 2 (Count II); assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153, 113(a)(6), and 2 (Count III); and using a firearm to

2

commit an assault, in violation of 18 U.S.C. §§ 924(c) and 2 (Count IV).  Hawkman pled guilty to Counts II and IV pursuant to a plea agreement under which the other two counts were to be dismissed.  The agreement also preserved Hawkman's right to appeal if there were an upward departure.

At the sentencing hearing in April 2005, the government called an FBI agent who testified about her investigation of the shooting and about Felecia's condition and injuries.  She stated that Felecia was living at the Children's Care Hospital Center, that she had undergone a tracheotomy, that she basically had no functionality below the mid chest level and wore a body jacket to hold herself up in a wheelchair, and that she had acted out in frustration over her physical limitations.[2]  She also testified that all of Diane's children had been removed from her custody.

Hawkman offered details about her family history through her great aunt.  The aunt told about the poverty of Hawkman's family when she was growing up, her early responsibilities because her parents were alcoholics, her removal from the parental home, her cohabitation with an adult male when she was fifteen, the prior assault on her by women of the Charging Elk family, and her lack of prior convictions for violent conduct.  Hawkman testified that before the incident she had tried to obtain custody of Felecia because she felt Diane was not an adequate parent.

The district court substantially adopted the recommendations of the presentence investigation report.  On Count II it set a base offense level of 14, added 7 levels for permanent or life threatening bodily injury to the victim and 2 levels for obstruction of justice, then deducted 3 levels for acceptance of responsibility.  This resulted in a total offense level of 20.  With a criminal history category of III, the guideline range

---

[2]The agent described Felecia's behavior after being mainstreamed into a school outside the hospital: "she has become more aware of what she does not have so she has had tantrums or hits her legs and been upset about what she doesn't have or what she now knows she doesn't have."

for Count II was 41 to 51 months, and the court sentenced Hawkman to 51 months on that count. The guideline sentence for Count IV was a statutorily required consecutive 10 years, the mandatory minimum under 18 U.S.C. § 924(c). See U.S.S.G. § 2K2.4. The court found that a sentence within the advisory guideline range would not be sufficient under the facts of the case, including the extent and permanence of Felecia's injuries and Hawkman's "knowing risk" of shooting "out of the window of a moving car multiple times into a yard full of people" while intoxicated. The court noted that "[t]here could be no more significant physical injury other than the death of the child" and that injuries like Felecia's result in a shortened life expectancy; it also distinguished Felecia's injuries from typical injuries stemming from an assault with a dangerous weapon. It discussed Hawkman's use of a firearm after drinking alcohol and stated that "it would be hard to imagine a greater case of recklessness in the face of all common sense." The court then departed upward on Count IV under § 5K2.2, the guideline section dealing with departures for physical injury, and imposed a sentence of 177 months. Since the sentence on Count IV was consecutive to that on Count II, the total sentence was 228 months. The court also imposed supervised release and restitution of $143,955.83.

Hawkman appeals, asserting that the district court erred in departing upward on Count IV for the same injury which was the basis for the 7 level enhancement on Count II. She also contends that her sentence was unreasonable, that it was greater than necessary, and that it contributes to sentencing disparity. The government responds that the departure was permissible and appropriate and that the sentence is reasonable.

Hawkman was sentenced after United States v. Booker, 543 U.S. 220 (2005), which requires district courts to calculate an advisory guideline sentence after considering the applicable policy statements and then to account for the statutory sentencing factors in 18 U.S.C. § 3553(a). See id. at 259-60; United States v. Haack, 403 F.3d 997, 1002-03 (8th Cir. 2005). We review sentences within or outside the

4

guidelines range for reasonableness.  See United States v. Mickelson, 433 F.3d 1050, 1055 (8th Cir. 2006).

Hawkman asserts that the district court's upward departure on Count IV was double counting in violation of the application note to U.S.S.G. § 5K2.0 (the general policy statement discussing the grounds for upward departure) because it was based on the same physical injury which had been the basis for the 7 level increase on Count II for permanent or life threatening bodily injury under § 2A2.2(b)(3)(C) (the aggravated assault guideline).  She relies on United States v. Myers, 66 F.3d 1364 (4th Cir. 1995), where the district court committed harmless error in departing upward for physical injury when that factor was accounted for in the robbery guideline and the district court made no finding that the guideline sentence would have been inadequate. Id. at 1375.

The government responds that neither the extent nor the permanence of Felecia's injuries or her age were adequately accounted for in the guidelines and that the court's departure was appropriate.  The government relies on United States v. Evans, 285 F.3d 664 (8th Cir. 2002), an abuse case upholding an upward departure for significant physical injury even though one of the enhancements in the guideline for criminal sexual abuse was based on serious bodily injury.  It also cites two cases approving upward departures for psychological injury where there had also been enhancements for permanent or life threatening bodily injury.  See United States v. May, 413 F.3d 841, 846 (8th Cir. 2005) ("this form of 'double-counting' is permissible under the Guidelines"); United States v. Thin Elk, 321 F.3d 704, 709-710 (8th Cir. 2003).

In reply, Hawkman argues that the cases cited by the government are inapposite since none had a § 5K2.2 departure for physical injury to a single victim and departures for psychological injury come under § 5K2.3, which has different language than the applicable guideline here.  She urges instead that we follow cases decided by

5

other circuits under § 5K2.1 (departures involving death) since § 5K2.2 states that the same considerations should generally apply under both provisions. See, e.g., United States v. Roston, 986 F.2d 1287(9th Cir. 1993), United States v. Whiteskunk, 162 F.3d 1244 (10th Cir. 1988). She argues that the underlying offense guideline applicable in those cases was based upon the extent of injury, that that fact controlled the departure issues there, and that the same fact should control in this case as well.

We review the district court's decision to depart upward for abuse of discretion. United States v. Fogg, 409 F.3d 1022, 1026 (8th Cir. 2005). Section 5K2.0(a)(3) permits an upward departure in an exceptional case where there is a circumstance "substantially in excess" of the ordinary offense. The application note to § 5K2.0 reinforces this concept where there is an aggravating circumstance not adequately taken into account by the guidelines. See U.S.S.G. § 5K2.0, cmt. n. 3(B)(i). Section 3(B)(ii) of the note gives several examples of the types of circumstances that justify a departure because they are not sufficiently reflected in the guidelines; such circumstances may be exceptional either in type or degree. See U.S.S.G. § 5K2.0, cmt. n. 3(B)(ii). The guideline for the mailing of injurious articles, for example, does not address the disruption of a governmental function, but that factor might warrant an upward departure if there were a significant disruption. See id. The injury accounted for by the robbery guideline is simple physical injury, but there may in some cases be unusually severe injuries or multiple injuries warranting a departure. Hawkman relies on the robbery guideline example in the note and asserts that "no further enhancement is permitted where a single individual is injured and the underlying Guideline adds incremental increases based upon the extent of injury." The example referring to multiple victims is illustrative of one circumstance where the harm may be found to exceed that foreseen in the guideline, but that does not mean that an upward departure would not be warranted if there were other aggravating circumstances not accounted for in the guidelines.The district court explicitly found the guideline range insufficient to account for the facts in this case. Felecia suffered numerous and varied injuries: she will not be able to walk again, she cannot sit

upright, she has lost virtually all lower body functions, and she has sustained emotional injury, as evidenced by her tantrums. Felecia's injuries will cause her to suffer for the remainder of her life, and it is likely that her life expectancy is affected. The court found that the severity of Felecia's injuries was just below that of death and noted the discrepancy between the injuries in this case and those in a typical case of assault with a dangerous weapon. The court also noted the seriousness of combining alcohol with use of a rifle and found that Hawkman was aware of the risk she was taking. This case falls squarely within the general departure authority provided by § 5K2.0 and the specific authority to depart based on physical injury in § 5K2.2: Felecia sustained exceptional physical and psychological injuries that are not accounted for by the aggravated assault guideline.

The record indicates that Felecia suffered psychological or emotional injury as well as physical, and her physical injuries were compounded by sustaining them at the young age of three, thus affecting the length and quality of her whole life span. This case is unlike Myers, where the court failed to find that the enhancement for physical injury under the robbery guideline was inadequate and committed harmless error. Myers, 66 F.3d at 1375. Here, the district court explicitly stated that the guideline sentence was insufficient, and its departure satisfied the guideline rules for upward departure. We have found "double counting" permissible in the departure context if the facts support it. See Thin Elk at 709. We conclude that the district court did not err in its findings in this case nor abuse its discretion by deciding to depart.

Hawkman also challenges the reasonableness of her sentence. She argues that the sentence violates 18 U.S.C. § 3553 because it was greater than necessary, creates an unwarranted sentencing disparity, and was imposed without sufficient detail in the judgment as required by § 3553(c)(2). She also argues that the court erred in its calculation of the number of assaults when it found that each shooting constituted an assault rather than finding that the shootings were the result of one impulse and consequently a single offense. See United States v. Chipps, 410 F.3d 438, 448 (8th

7

Cir. 2005). Hawkman further asserts that the court failed to consider the nature and circumstances of the case and her history and characteristics and that there is a disparity between her sentence and those affirmed by this court in recent aggravated assault cases involving intentional infliction of brutal harm. The government responds that the sentence is reasonable.

The district court discussed the reasoning behind its sentence and the upward departure both during the sentencing hearing and in its statement of reasons and noted in each instance that it had considered the factors in § 3553. The explanation in the court's statement of reasons complied with § 3553(c)(2). See United States v. Wheeler, 412 F.3d 979, 981 (8th Cir. 2005) (§ 3553(c) requires a statement "sufficient to ensure adequate review of the departure"). In arguing that her sentence was greater than necessary and that it creates an unwarranted sentencing disparity, Hawkman cites no case in which the defendant shot a victim with a firearm or in which the victim was a child paralyzed for life; we consequently are not persuaded by her allegation of a sentencing disparity. Furthermore, any possible error in the court's conclusion that each shot was an assault was harmless, given the court's explanation that multiple reasons justified the sentence.

The district court recognized during the sentencing hearing that Hawkman was remorseful and had not intended to shoot Felecia, but it also found that her acts had been reckless and that her warning to Diane's son showed an awareness that someone could be injured by the gunshots. The court found that Felecia would suffer the effects of Hawkman's action her entire life and that the advisory guideline range would not be "a sufficient sentence under the facts here." The judge distinguished more typical assaults, whose effects are temporary, from the assault in this case and determined that the risk of great injury had been knowingly taken by Hawkman. After examining the record and the district court's thorough consideration of all of the facts and circumstances of the offense, including mitigating and aggravating factors, we conclude that the sentence imposed was not unreasonable.

Accordingly, we affirm the judgment of the district court.

_____