# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

v.

No. 03-4447

MARCUS J. LEWIS,
　　　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Rebecca Beach Smith, District Judge.
(CR-03-7)

Submitted: November 26, 2003

Decided: March 9, 2004

Before LUTTIG, MOTZ, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

Frank W. Dunham, Jr., Federal Public Defender, Larry M. Dash, Assistant Federal Public Defender, Norfolk, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Ryan R. McKinstry, Special Assistant United States Attorney, Norfolk, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Marcus J. Lewis ("Lewis") pled guilty to assault resulting in serious bodily injury, 18 U.S.C.A. §§ 7, 113(a)(6) (West 2000 & Supp. 2003). The victim was his stepson, Marcus Lewis, Jr. ("Marcus"), who was two years old. The district court sentenced Lewis to ninety months imprisonment. Lewis appeals his sentence, arguing that the district court abused its discretion in departing above the guideline range based on extreme conduct, *U.S. Sentencing Guidelines Manual* § 5K2.8, p.s. (2002), and the similarity of his conduct to a prior offense for which he had been court-martialed. We affirm.

On January 2, 2003, while Lewis's wife, Army Sgt. Lisa Lewis, was at work, Marcus sustained first and second degree burns on his face, torso, buttocks, and fingers caused by contact with the five-inch long rectangular hot metal grate that covered the vent of a hair dryer. Lewis later gave conflicting statements about how the burns occurred. Marcus was in bed when Lisa came home that evening and left early the next morning for temporary duty in Texas. A day later, Lewis told Lisa during a telephone call that he had accidentally burned Marcus with the dryer. At Lisa's direction, Lewis took Marcus to the house of a friend, who took Marcus to the hospital at Ft. Eustis, Virginia. Marcus was later evaluated at the Portsmouth Naval Medical Center burn unit. The doctor there determined that the burns were a day or two old and beginning to scab over, except on Marcus's buttocks, possibly because those burns were kept more moist by his diaper. Marcus was prescribed Motrin and apparently was released. The assessment sheet categorized his condition as "semi-urgent." A search of the Lewis' quarters disclosed a sheet from Marcus's bed and one from a queen-sized bed, both stained with blood; a child's shirt and pants, both stained with blood; and an adult shirt and undershirt, both stained with blood.

Lewis had previously been convicted at a general court martial of two counts of assaulting Marcus when he was less than three months old. In that offense, Lewis twisted Marcus's arms and legs, squeezed Marcus's chest, and struck his head on several occasions, causing Marcus to suffer fourteen fractures. Lewis was confined for eighteen

months and given a dishonorable discharge from the Army. The discharge was suspended pending Lewis's appeal, which had not been resolved at the time of the instant offense.

Before sentencing, the government moved for an upward departure based on extreme conduct, USSG § 5K2.8, and the fact that Lewis received a relatively lenient sentence for a prior similar crime committed against the same victim. *See* USSG § 4A1.3, comment. (backg'd). The district court agreed that an upward departure was appropriate. First, the court found that Lewis's conduct fit the definition of extreme conduct, *i.e.*, it was cruel, brutal and degrading, and included the gratuitous infliction of injury with prolonged pain and humiliation. The court also found that the enhancement for serious bodily injury provided in § 2A2.2, the guideline applicable to the offense, did not account for this aspect of Lewis's conduct because it focused on the victim's injury rather than the nature of the defendant's conduct. With respect to the second ground for departure urged by the government, the court decided that Lewis's criminal history category was adequate to reflect his past criminal conduct. However, the court found that the similarity between the instant offense and Lewis's prior conviction for abuse of the same victim warranted a departure. The court departed to a sentence of ninety months imprisonment, the equivalent of a three-level upward departure, or nineteen months more than the maximum of seventy-one months permitted under the applicable guideline range.

A sentencing court may depart from the guideline range only if the court finds an aggravating or mitigating factor of a kind, or to a degree, not adequately considered by the Sentencing Commission. 18 U.S.C. § 3553(b) (2000); *Koon v. United States*, 518 U.S. 81, 98 (1996). As of April 30, 2003, the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650, requires a reviewing court to conduct a de novo review of certain departure decisions. *Id.* § 401(d), 117 Stat. at 670. The appeals court must review de novo whether the district court failed to provide a written statement of its reasons for departing, 18 U.S.C.A. § 3742(e)(3)(A) (West Supp. 2003), and whether the departure was based on a factor that (1) does not advance the objectives set forth in 18 U.S.C.A. § 3553(a)(2) (West Supp. 2003), (2) is not authorized by § 3553(b), or (3) is not

justified by the facts of the case. *Id.* § 401(d), 117 Stat. at 670; 18 U.S.C.A. § 3742(e)(3)(B)(i)-(iii) (West Supp. 2003).

A sentencing court is encouraged to depart upward to reflect the nature of the conduct "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim . . ." and suggests as examples of such conduct "torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." USSG § 5K2.8. Lewis acknowledges that extreme conduct is an encouraged factor for departure, but argues that his conduct was not as egregious as the conduct of other defendants in cases where an upward departure for extreme conduct has been upheld on appeal. *See, e.g. United States v. Myers*, 66 F.3d 1364, 1369 (4th Cir. 1995) (victim of carjacking and kidnapping was raped repeatedly at gunpoint, choked, had her neck twisted until her collarbone popped, was pistol whipped and dragged, and suffered permanent damage to one eye).

The district court emphasized the age of the victim in its explanation of reasons for the departure. However, the fact that the victim was a two-year old child was accounted for in the guideline calculation when Lewis received a two-level vulnerable victim adjustment under USSG § 3A1.1(b)(1), and thus cannot be used to justify a departure. We note that Lewis prolonged Marcus's pain by repeatedly burning him and not seeking treatment for his burns. The burns were severe enough that at least some of the wounds bled. Lewis surely observed a pain reaction from Marcus each time he touched the dryer to Marcus's skin. Yet he continued, burning Marcus all over his body. Although the burns apparently healed quickly, we conclude that this repeated infliction of pain qualifies as extreme conduct. Therefore, we are satisfied that the district court's decision to depart on this ground advanced the objectives set out in § 3553(a)(2) and was justified by the facts of this case. We further conclude that the extent of the departure was not unreasonable, *see* § 3742(e)(3)(C), and we affirm the departure on this ground.

The correctness of the court's decision to depart because of the similarity of Lewis's conduct to his prior offense is less clear. Under § 4A1.3, an upward departure is encouraged if the defendant's criminal history category does not adequately reflect the seriousness of his past criminal conduct or the likelihood that he will commit further

crimes. The background commentary to guideline section 4A1.1 notes that "§ 4A1.3 permits information about the significance or similarity of past conduct underlying prior convictions to be used as a basis for imposing a sentence outside the applicable guideline range." Such a history may warrant a departure because it indicates a high likelihood of recidivism. Section 4A1.3 also states that a departure may be warranted when the defendant previously received a lenient sentence for a serious offense.

Lewis's case is not like these examples because he was convicted for his prior assault on Marcus and the sentence was counted in his criminal history. The district court could have relied on either the leniency of Lewis's prior eighteen-month sentence of imprisonment or the likelihood that he might commit such offenses in the future to explain its departure, but it did not. While the inadequacy of the defendant's criminal history category is an encouraged factor for departure, and the similarity of a prior offense to the instant offense may be a factor in that determination, the similarity of a prior offense —standing alone—is a factor that is unmentioned in the guidelines as a basis for departure. Factors that are unmentioned in the guidelines as possible grounds for departure may infrequently justify a departure where the structure and the theory of both relevant individual guidelines and the Guidelines as a whole indicate that they take a case out of the applicable guideline's heartland. *United States v. Rybicki*, 96 F.3d 754, 758 (4th Cir. 1996) (internal quotation and citation omitted).

Here, employing a de novo standard of review, we conclude that Lewis's repeat assault on the same victim takes his case out of the heartland of cases in which § 2A2.2 applies, and that the departure does not conflict with the objectives of the Protect Act.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*